Ruffin, C. J.
 

 If the evidence had been heard, it could have availed nothing ; and for that reason the verdict should
 
 *457
 
 not be distm-bed. The oath of the prosecutor was, on the former trial, that the grand-father and grand-mother of the de-fetid a lit were coal black negroes. In that we must understand- him to mean the reputed grand-father, as no marriage is stated. Now, that is not contradicted by the declaration of the grand-mother, evemif true, that the natural father of her daughter was a white man ; for it is not suggested that the prosecutor knew thereof, or, even tha't there was such a reputation in the neighborhood-,■ or among the kindred of the defendant. But admit that the defendant’s grand-father was white, and the grand-mother only half African — of which. la'st there is no evidence, still the defendant would have been within the degree prohibited from contracting marriage with a white woman. We say, prohibited degree, because, although the act which annuls marriages between the two races, uses the words
 
 “
 
 persons of color” generally, we are of dpinion, that expression must be construed in reference to other disabilities imposed, for reasons of a similar nature?, Upon persons of mixed blood. The act of 1777, c. 115, s. 42, the Rev. Stat. ch. 111, s. 74, and the Constitution, article 1st, s. 3, besides other' laws, designate such persons as those descended from' negro ancestors, to the fourth generation inclusive, though one ancestor of each generation may have been a white person. And thus restricted, the act includes the defendant, who, at most, was only the third generation from a full negro.
 

 But we are of opinion that the evidence was properly rejected, independent of the aboveground. It was hearsay; and does not fall within any of the established exceptions to the'general rule; which excludes such evidence. The Legislature has not prescribed the mode in which, in cases of birth out of wedlock, it is to be ascertained whether one of the ancestors was a white pérson ; and we should, perhaps, be at some loss to lay down a rule. But certainly if this is to be viewed as an attempt to prove a pedigree by the reputation in the family, and the declarations of deceased members of it, there is a signal failure. The declaration of the grand-mother assigns the paternity of her child to no' man-
 
 *458
 
 in particular, but only to some white man ; and would be the loosest proof of pedigree that ever established one. But if she had mentioned the father by name, and nothing more appeared, such as a recognition of the child by the designated person, or the appearance in point of color of the child or the like, it would have amounted to nothing. It could not be admitted under that class of cases, in which entries or declarations of third persons, with peculiar means of knowledge have been received. For in those cases the entry or declaration was cotemporaneous with the fact; and was also made by one under no motive to pervert the truth. It does not appear, that this declaration was
 
 at
 
 or about the birth of her child ; nor .when it was. And, besides, it is well known that persons, of the description of this woman, have a strong bias in their minds to induce the declaration from them, and, it possible, the impression on others, that their illegitimate child is the issue of a white man: if not "to gratify a personal vanity in themselves, for the reason, that it removes their offspring one degree from the humbled caste in which he'is placed by the-law, whereby he is excluded from the elective franchise, and from competency as a witness between white persons, and prohibited from intermarrying with them.
 

 Per Curiam. Judgment affirmed.